UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BRISHAWNA L. SILBY,<br>    Plaintiff,<br>v.<br><br>PARISH OF JEFFERSON, ROY JUNCKER, DIRECTOR DEPARTMENT OF JUVENILE SERVICES, CHRISTOPHER TROSCLAIR, ASSISTANT DIRECTOR DJS, ABC INSURANCE COMPANY,<br>    Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | CIVIL ACTION NO.:<br><br><br><br>SECTION: |
| ***************************************** | * | ******************************** |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, BRISHAWNA L. SILBY ("SILBY"), who hereby brings this Complaint and respectfully avers, as follows:

## INTRODUCTION

1. Plaintiff brings this action for declaratory judgment, equitable relief, and monetary damages to secure the protection against and to redress unlawful discrimination on the basis of sex, gender, and retaliation under the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e *et. seq.*, as amended ("Title VII"), 42 U.S.C §1983 and Louisiana laws prohibiting intentional discrimination including the Louisiana Employment Discrimination Law codified as LSA-R.S. 23:332, *et seq.*, and La. Civil Code 2315 for intentional infliction of emotional distress.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction of the Plaintiff's Section 1981 claims pursuant

to 28 U.S.C. §§1331 and 1343. The Court has original jurisdiction of the plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331, 1343, 2202, and 42 U.S.C. §2000e-5.

3. Supplemental jurisdiction over Complainant's state law claims is invoked under both Rule 18 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367, because they are part of the same case or controversy as Complainant's federal claims.

4. This Court has personal jurisdiction over the Defendants- as each defendant is either domiciled in the Eastern District of Louisiana and the acts and omissions of all defendants occurred in the Eastern District of Louisiana.

5. Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims asserted occurred in the Eastern District.

6. Venue is also proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391 and 42 U.S.C.A. §2000e-5(g).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Complainant has satisfied all administrative prerequisites for filing suit under Title VII and the Louisiana Employment Discrimination Law, R.S. 23:302 *et. seq*.

8. On or about July 8, 2020, Silby filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On December 31, 2020, the EEOC issued Complainant a Notice of Right to Sue.

9. This Complaint is being filed within 90 days of Complainant's receipt of the Notice of Right to Sue.

## THE PARTIES

10. Plaintiff, Brishawna L. Silby ("Silby"), is a person of the full age of majority, domiciled in the Parish of Jefferson, State of Louisiana. Silby was employed as a Juvenile Home

Detention Supervisor for Jefferson Parish Department of Juvenile Services from May 11, 2019 until her demotion effective February 22, 2020.

11. Defendant Parish of Jefferson ("Jefferson Parish" or "The Parish") is a government body created pursuant to the laws of the State of Louisiana and is located within the Eastern District of Louisiana. At all relevant times, The Parish is and was the Complainant's employer through the Department of Juvenile Services and had at least 20 employees.

12. Defendant Roy Juncker is the Director for the Department of Juvenile Services and a resident of Jefferson Parish. Suit is brought against Juncker in his individual and official capacities.

13. Defendant Christopher Trosclair is the Assistant Director for the Department of Juvenile Services and a resident of Jefferson Parish. Suit is brought against Trosclair in his individual and official capacities.

14. Defendant ABC Insurance Company, upon information and belief, issued a policy of insurance to The Parish which provides coverage for the acts and omissions alleged in this Complaint.

15. Each of the acts and omissions complained of in this Complaint were committed by the defendant and its agents while in the course and scope of their employment with The Parish.

16. In doing the acts and/or omissions alleged, Defendants acted under color of authority and/or color of state law.

**FACTUAL ALLEGATIONS**

17. Plaintiff, Silby, was hired to work as a Juvenile Home Detention Supervisor for the Jefferson Parish Department of Juvenile Services at the Rivarde Juvenile Detention Center, on or about May 11, 2019.

18. Silby's first day at the Rivarde Detention Center was on or about May 14, 2019 and she was assigned to on-the-job training from Home Detention Supervisor Violet Troulliet, (Caucasian Female). Ms. Troulliet was also responsible for handling the work schedules for Supervisors and Detention Officers at Rivarde.

19. As part of her training, Silby was provided a copy of the Rivarde Handbook, a handwritten document, and on the job training during the day shift with Ms. Troulliet from approximately May 13, 2019 through May 23, 2109, and approximately one week, from May 23, 2019 through May 31, 2019, with Home Detention Supervisor Christopher Bruno.

20. After Silby completed the limited training provided, her schedule from midnight to 8:00 a.m. Saturday through Wednesday.

21. On or about August 29, 2019, Trosclair contacted Silby concerning late arrival at work and was advised that he would recommend to Director Juncker that her probationary period be extended, but if the issue were immediately corrected and sustained then a probationary period could be shortened so that it is not for a full year. Silby explained that during training she was advised that the time keeping system had a grace period of seven minutes. Silby corrected the issue after she was informed there was no grace period in the Kronos system.

22. On October 16, 2019, Trosclair and Silby had a meeting, where Trosclair asked if Silby would work an earlier shift. Silby advised that she is a single mom with two children, one with a disability, and specifically chose the midnight to 8:00 a.m. shift to care for her sons and mother. Trosclair acknowledged that she was unable to change shift due to her family's needs and even provided Silby with a recommendation for a doctor her son.

23. On November 6, 2019, Silby was advised that she successfully completed her

4

working test period and would be a permanent civil servant effective November 11, 2019.

24. Shortly thereafter Trosclair made several attempts to write up and/or discipline Silby for incidents where she was not involved.

25. On or about December 17, 2019, at 7:30 p.m. while D.O. Warren was on duty an incident occurred involving a juvenile who kicked his door, put toilet paper on his window, and made a bowel movement in his sheets.

26. On December 19, 2019, Trosclair admonished Silby for not completing an incident report. Silby was on vacation on December 17, 2019 but returned to work on December 19, 2019 and was advised that she was required to complete the incident report although it did not occur on her shift.

27. On the evening of January 7, 2020 Detention Officer (D.O.) Robinson admitted a juvenile (D.W.) with contraband, which was included on the intake form signed by Supervisor Brian Davis.

28. On January 8, 2020, Silby was contacted by Trosclair advising that the situation with D.W. was unacceptable on the part of the detention officer and supervisor on duty. Trosclair questioned Silby about the incident with D.W. as well as another incident when a 17-year-old female (J.J.) was admitted on January 8, 2020 at 12:45 am; who should not have been admitted. Silby explained to Trosclair that she was not on shift when D.W. was admitted with contraband, but D.O. Robinson and Supervisor B. Davis processed her intake. Silby also advised that a D.O. Kynan Davis, a 15-year veteran who usually works alone at the intake desk and is usually the acting supervisor for the overnight shift when one is more available mistakenly admitted the 17-year-old female. D.O. Davis admitted that it was his error and that he failed to notify Silby. Silby was given a coach and counseling for the issue, her first and only record of discipline while at

DJS.

29. On Saturday, January 11, 2020, Supervisor Wilkerson caught D.O. Bailey sleeping at work. Wilkerson emailed her supervisor, Sacks, and cc'd Silby and Assistant Director Trosclair advising that D.O. Bailey had two verbal warnings and requested permission to issue a Coach and Counseling. Trosclair responded to Wilkerson that she did not need permission to do a coach and counseling but to notify Trosclair and Sacks before issuance or immediately after. Silby was not at work on January 11, 2020 and was not made aware of D.O. Baily incident on January 11 until she presented for work on Monday, January 13, 2020.

30. On January 13, 2020, Assistant Director Trosclair went to the Rivarde Detention Center at approximately 3:00 am based on a tip he claims he received on January 7, 2020, from Juvenile Home Detention Supervisor Christopher Bruno (Caucasian Male), claiming that Detention Officer William Corkern (Caucasian Male) told him that multiple people were sleeping on the night shift, including Supervisors Wilkerson (African American Female) and Silby.

31. When Trosclair arrived in the early morning of January 13, 2020, he found two Detention Officers asleep on duty. Trosclair also claimed that he saw Silby sleeping on duty when he peered through holes in the window blinds. Trosclair required that Silby, Wilkerson, and Bailey all immediately write statements related to the sleeping incident.

32. At the time that Silby was hired, Trosclair was working as both the Assistant Director and the Home Manager for Rivarde. In December of 2019, Mr. Ralph Sacks took over the position of Home Manager. As Home Manager Mr. Sacks was Silby's immediate supervisor and the person to complete her evaluation.

33. On January 14, 2020, Silby had to attend a doctor appointment for her mother, which she communicated to her supervisor Sacks. Silby advised as soon as she was made aware

of the appointment. Jefferson Parish policy requires a two-hour notice be provided, Silby provided three hours' notice, however, Trosclair took issue with her request for leave.

34. On January 15, 2020, Silby contacted H.R. Manager Gretchen Tilton and requested information to file a grievance against Trosclair for harassment and discrimination. Silby advised that Trosclair was targeting her and had recently accused her of several alleged policy violations. Silby advised that she was afraid to file a grievance because she believed Trosclair would further retaliate against her and that Trosclair's friendship with Director Juncker would influence his judgment.

35. On January 21, 2020, Silby received a notice of a pre-disciplinary hearing for sleeping at her post on January 13, 2020. She was accused of violating policies 403 Attendance; 501 General Provisions; 502 Maintaining Standards of Effective Service, and 503 Reporting and Performance of Duty. Silby was advised that a hearing would be held on January 23, 2020 at 10:00 a.m. where she would be allowed to provide evidence and her position.

36. On January 23, 2020, Silby attended her pre-disciplinary hearing with HR Representative Gretchen Tilton, Director Roy Juncker, Assistant Director Christopher Trosclair, and Home Manager Ralph Sacks. Silby was not provided with the opportunity to address the false statements and accusations made against her during the hearing. Silby was also accused of several other incidents that were not included in the pre-disciplinary letter, depriving her of due process and the opportunity to prepare and provide a response.

37. On the morning of February 21, 2020, Silby was informed by Sacks that he needed to review her evaluation with her and had a decision from the disciplinary hearing. Silby's evaluation indicated that she needed improvement in attendance, an issue previously discussed in October of 2020, which disqualified her for a raise. During the meeting Trosclair contacted Sacks

to advise that the evaluation for November 11, 2019, although it was dated February 2020. Silby was denied a copy of her evaluation.

38. On February 21, 2020, Silby also received a disciplinary letter advising that she was demoted to Juvenile Detention Officer II, and a reduction in her annual salary by $9,161.00, effective at the close of business Friday, February 21, 2020. The disciplinary letter fails to meet the procedural requirements under due process and Jefferson Parish rules.

39. On February 21, 2020, Silby was provided a new schedule, which required her to present to work the following day for the 3 pm to 11 pm shift. Silby previously advised Trosclair that she could not work that shift because of her disabled child and family needs. She was given less than 24 hours' notice to present for her new schedule.

40. On February 21, 2020, Silby had to go to the doctor, she presented DJS with a doctor's note excusing her from the 21st through the 27th of February and that she could return to work on February 28, 2020.

41. On February 28, 2020, at 11:27am, Roy Junker called Silby and threatened her that he did not believe she was sick, and that sick leave can only be approved by him. Juncker said that if Silby did not present to work that day she would be presumed resigned. Silby was wrongfully denied sick leave a floating holiday on her last paycheck.

42. Silby continued to suffer harassment, discrimination and retaliation and resigned on March 10, 2020.

43. On March 12, 2020, Silby filed an appeal to her demotion with Jefferson Parish Civil Service.

44. On July 8, 2020, Silby filed a charge of discrimination with the EEOC for retaliation, and discrimination based on sex and race.

45. The Civil Service hearing for Silby's appeal was continued by the parish multiple times and was held on September 29, 2020 and October 13, 2020. On October 20, 2020, Referee Nass issued an order denying Silby's appeal and determined that despite Silby's denial she was asleep while on the job on January 13, 2020 for a long period of time and that she was splitting rounds, but it appeared that splitting rounds was perceived by all to be an acceptable practice, if not actually permitted.

46. Silby appealed the Referee's determination upholding the discipline and filed an appeal to the board on November 4, 2020. Oral argument was presented on February 23, 2021. The board affirmed the referee decision.

47. Silby asserts that other non-African American employees and men in DJS have been treated more favorably than Silby, were afforded progressive discipline or no discipline at all after failing to follow policy and/or department guidelines, for which Silby was disciplined.

    a. Upon information and belief D.O. Ingrid Banks Marquez allowed a juvenile into Rivarde with contraband. Supervisors Bruno, Troulliet and Banks were on duty but not disciplined.

    b. Silby was accused of policy violations for not checking bags of employees on her supervisor shift. Troulliet did not check employee bags, nor did she train Silby to check employee bags on arrival and was never disciplined for such conduct. Christopher Bruno did not check employee bags or train Silby to check them.

    c. Christopher Bruno did not perform rounds as required by policy but was never disciplined.

    d. Upon information and belief prior supervisor Stanley LeBlanc was never

    disciplined for a serious violation against a female youth at Rivarde.

  e. Prior to Silby's arrival an incident occurred where several supervisors and D.O.s were caught sleeping on the job. All employees were given a one-week suspension, and the supervisor Dixon was permitted to resign.

  f. On January 27, 2020, Silby was contacted by Trosclair for her failure to complete an incident report prior to leaving at the end of her shift. Silby advised that her email was not working and asked Supervisor Troulliet to send the incident report after they viewed the video together. Trosclair admonished Silby and advised that it was not Troulliet' s responsibility to send the report because it was on Silby's shift.

  g. Upon information and belief there was a riot at Rivarde in the fall of 2020 while supervisor Bruno was on shift. No one was disciplined for the incident.

  h. D.O. Lee Riley (Caucasian Male) admitted a 12-year-old juvenile into Rivarde, against policy. Neither D.O. Riley nor the supervisor on duty were disciplined or received a coach and counseling as Silby was when a juvenile was admitted that should not have been while she was the supervisor on shift.

48. The Defendants acts and/or omissions caused Silby to suffer mental, emotional, and psychological harm.

49. Silby has suffered substantial loss in present and future wages, employment benefits, and future career opportunities as a result of Defendants' unlawful conduct.

## CLAIMS FOR RELIEF

### COUNT 1
Violation of 42 U.S.C. §1981

50. Silby re-alleges and incorporates herein by reference all of the foregoing

allegations.

51. Silby is a member of a protected class, as an African American. Defendant's actions are in violation of the rights afforded Silby by the Civil Rights Act 1866, 42.U.S.C. §1981, as amened by the Civil Rights Act of 1991.

52. By conduct described above, Defendants intentionally deprived Silby of the same rights enjoyed by white citizens to the creation, performance, enjoyment and all benefits and privileges of their contractual employment relationship with Defendants, in violation of 42 U.S.C. §1981.

53. As a result of Defendants' discrimination in violation of Section 1981, Silby has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of Defendants' actions, thereby entitling her to compensatory damages.

54. In its discriminatory acts described above, Defendants acted with malice or reckless indifference to Silby's rights, thereby entitling her to punitive damages.

## Count 2

### Title VII, 42 U.S.C. § 2000e-2(a)
### Disparate Treatment – Gender

55. Silby re-alleges and incorporates herein by reference all the foregoing allegations.

56. Silby is a member of a protected class, as an African American female, and is qualified for the position she held.

57. Silby was the subject of mistreatment by several Parish employees, including but not limited to Christopher Trosclair and Roy Juncker on the basis of her gender. On multiple

occasions Trosclair and Juncker treated Silby differently than other non-female employees, who were either disciplined less harshly or not at all for similar or more egregious policy violations than those alleged against Silby in her pre-disciplinary hearing.

58. Silby reported the discriminatory conduct to her employer, who failed to take reasonable remedial measures.

59. Defendant Trosclair's actions were taken with malice and reckless disregard for Complainants' right to be treated on an equal basis with men.

60. Defendant Juncker did not take reasonable remedial measures to address the discriminatory actions of his subordinates, in reckless disregard for the Complainant's rights as secured by federal law.

61. The Parish discriminated against Complainants in violation of 42 U.S.C. § 2000-e2(a).

## COUNT 3

### Title VII, 42 U.S.C. § 2000e-2(a)
### Disparate Treatment – Race

62. Silby re-alleges and incorporates herein by reference all of the foregoing allegations.

63. Defendants discriminated against Plaintiff on the basis of her race. Plaintiff was treated differently than other non-African American, and Caucasian similarly situated employees. She was treated more harshly, scrutinized, and/or disciplined more severely than other non-African American and Caucasian similarly situated employees.

64. Defendants failed to exercise reasonable care either to prevent this discrimination or to promptly correct these practices.

65. Defendants conduct was intentional, and done with malice or with reckless

indifference to Silby's federally protected rights.

66. The Parish discriminated against Complainants in violation of 42 U.S.C. § 2000-e2(a).

## COUNT 4

### Title VII, 42 U.S.C. § 2000e-3(a)
### Retaliation

67. Silby re-alleges and incorporates herein by reference all of the foregoing allegations.

68. Silby engaged in protected activity, by opposing the disparate treatment and discrimination as describe in preceding paragraphs.

67. The Parish, through Trosclair, Juncker, and others, retaliated against Silby by engaging in a series of materially adverse actions against her that would have dissuaded a reasonable person from complaining of discrimination.

68. Defendants took the adverse actions against Silby because of her protected activities.

69. Defendants' actions were taken with malice and reckless disregard for Silby's right be free from discrimination in the workplace.

70. For the foregoing reasons, the Parish retaliated against Complainants in violation of 42 U.S.C. § 2000-e3(a).

## COUNT 5

### 42 U.S.C. §1983
### Deprivation of a Vested Property Right

71. Silby re-alleges and incorporates herein by reference all of the foregoing

13

allegations.

72. The Fifth and Fourteenth Amendments of the United States Constitution, as well as the Louisiana Constitution and Louisiana law establish a constitutionally protected property right to due process for civil servants.

73. Silby enjoys a vested property right in her position as a civil servant and can only be terminated for cause after due process.

74. The demotion was without cause, arbitrary and capricious, and resulted in a clear denial of Silby's guaranteed and vested property right in her employment.

75. Silby was not provided adequate notice and an opportunity to be heard in advance of the pre-disciplinary hearing, the hearing included discussion of accusations and alleged policy violations not included in the pre-disciplinary hearing notice. Further, Defendants failed to follow its policies relating to the pre-disciplinary hearing and failed to provide written notice of the reasons for the adverse employment action and how the policies were violated.

## COUNT 6

**State Law Discrimination based on Race and Gender and Retaliation**
**LA. R.S. § 23:3301 et. seq.**

76. Silby re-alleges and incorporates herein by reference all of the foregoing allegations.

77. Defendants are liable to Wilkerson under the Louisiana Employment Discrimination Law, La. R.S. § 23:3301 *et. seq.* as described in the preceding paragraphs.

## COUNT 7

**Wrongful Demotion LSA C.C. 2315**

78. Silby re-alleges and incorporates herein by reference all of the foregoing allegations.

79. Silby brings an action against the Defendants for wrongful demotion pursuant to LSA

C.C. art. 2315, when individual defendants, acting in their individual or official capacities as employees of Jefferson Parish demoted Silby without cause and the decision was arbitrary and capricious.

80. By virtue of respondeat superior, Jefferson Parish is legally responsible and may be held liable for the actions of its employees.

81. As a consequence of her demotion, Silby suffered loss of earnings and will continue to suffer loss of future earnings as well as mental distress.

## JURY DEMAND

82. Silby demands a Jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** after due proceedings are had, Silby prays that this Complaint be deemed good and sufficient; and that this Court assume jurisdiction of this action and after trial:

i. Declare, pursuant to 28 U.S.C. § 2202 that the Defendants unconstitutionally violated Silby's constitutional rights;

ii. Grant Silby a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request, from continuing to violate Title VII and state anti-discrimination laws;

iii. Grant Silby compensatory damages for:
   1. Mental Anguish, Anxiety, and Emotional Distress;
   2. Back Pay, Loss of Future Earnings, and Loss of Earnings Capacity;
   3. Loss of Benefits;

iv. Grant Silby punitive damages in an amount to be determined at trial; and

v. Award Silby such other relief and benefits as the cause of justice may required, but not

limited to, an award of costs and attorney's fees.

vi. For any and all other just and equitable relief to which Silby may be entitled.

                         Respectfully Submitted,

                         ***/s/ Stephanie Dovalina***
                         Stephanie Dovalina, LSBA #31137
                         700 Camp Street, Ste. 105
                         New Orleans, LA 70130
                         Phone No.: (504)528-9500
                         Mobile: (504) 339-9815
                         Fax: (504) 353-9516
                         stephanie@dovalinalawgroup.com
                         Attorney for Brishawna L. Silby