UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BRISHAWNA SILBY | * | CIVIL ACTION |
| | * | NO. 21-662 |
| | * | |
| VERSUS | * | DIVISION: 1 |
| | * | |
| | * | MAGISTRATE JUDGE |
| PARISH OF JEFFERSON, ET AL. | * | JANIS VAN MEERVELD |
| | * | |
| ************************************ | * | |

ORDER AND REASONS

In this employment discrimination lawsuit, plaintiff Brishawna Silby alleges that she experienced unlawful discrimination on the basis of her gender, race, and retaliation in violation of federal and state law. She also claims to have suffered due process violations, that defendants are liable for conspiracy, and that the defendants have violated her rights under 42 U.S.C. § 1981. Defendants have filed a Partial Motion to Dismiss. (Rec. Doc. 17).

The court now finds that Silby's claim for punitive damages against Jefferson Parish under 42 U.S.C. §1981 must be dismissed because punitive damages are not available against municipalities. Further, the court finds Silby has failed to state a claim for a procedural due process violation because she alleges that she received notice and an opportunity to be heard and that she has failed to state a claim for a substantive due process violation because the facts she has alleged cannot plausibly lead to the conclusion that her demotion was arbitrary and capricious. Finally, her conspiracy claim must be dismissed because intra-corporate communications cannot support a conspiracy claim under 42 U.S.C. § 1985. Further, Silby has failed to state a §1981 claim against her supervisors and she has failed to state a claim for harassment or hostile work environment. Accordingly, it is ordered that Defendants' Motion is GRANTED and the aforementioned claims are dismissed.

1

<u>Background</u>

Plaintiff Brishawna Silby is an African-American female who began working as a Juvenile Home Detention Supervisor for the Jefferson Parish Department of Juvenile Services ("DJS") at the Rivarde Juvenile Detention Center in May 2019. She received on-the-job training by Home Detention Supervisor Violet Troulliet. The training lasted a week, and thereafter she received another week of on-the-job training with Home Detention Supervisor Christopher Bruno. After her training, she began working the midnight through 8:00 a.m. shift from Saturday through Wednesday.

Bruno and Christopher Trosclair, the Assistant Director of DJS, advised Silby in June 2019 that there was an opening on the 4pm to 12am supervisor shift. Silby declined the shift change and notified Bruno and Trosclair that she could not take the earlier shift because she needed to take care of her elderly mother and her children, one of whom is disabled.

On or about August 29, 2019, Trosclair contacted Silby about her late arrival at work and informed her that he would recommend to DJS Director Roy Juncker that her probationary period be extended. He also said it that if the issue were immediately corrected and sustained, then the probationary period could be shortened to less than a full year. Silby explained that she had been told during training that the time keeping system had a grace period of seven minutes. She alleges that when she learned there was no grace period in the Kronos system, she corrected the issue.

Silby alleges that she complained to Trosclair on multiple occasions about issues related to lack of staffing due to Troulliet's alleged failure to follow parish policy for scheduling detention officers. Silby alleges that after making these complaints, Trosclair began to target her by attempting to issue disciplinary action against her.

On October 16, 2019, Trosclair asked Silby if she would work an earlier shift. She again advised that she needed to work the midnight to 8:00 a.m. shift so she could care for her children and mother.

On November 6, 2019, Silby was advised she had successfully completed her working test period and would be a permanent civil servant effective November 11, 2019. She alleges that shortly thereafter, Trosclair attempted to write up and/or discipline her for incidents where she had not been involved.

For example, on December 17, 2019, at 7:30 p.m., an incident occurred involving a juvenile who kicked his door, put toilet paper on his window, and made a bowel movement on his sheets. Detention officer ("D.O.") Warren was on duty and Trouillet was the supervisor on duty. Silby was on vacation at the time and did not return to work until December 19, 2019. On that day, Trosclair admonished Silby for not completing an incident report regarding the December 17, 2019 incident. He informed her that she was required to fix and complete the investigative report that Trouillet had not finished, and she was disciplined for failing to do so timely.

As another example, Silby alleges that on January 7, 2020, D.O. Robinson admitted a juvenile with contraband while supervisor Brian Davis was on duty. Silby alleges that Trosclair advised her on January 8, 2020, that the January 7 situation with the juvenile as well as an incident involving a juvenile improperly admitted on January 8, 2020 at 12:45 a.m., were unacceptable. She explained that she was not on shift at the time of the January 7, 2020, incident and that D.O. Dynan Davis usually works at the intake desk as acting supervisor for the overnight shift at the time the juvenile was admitted at 12:45 a.m. D.O. Davis admitted it was his error and that he failed to notify Silby. Silby says she was not aware of the policy failure until she was given a "coach and counseling" for the issue.

On January 11, 2020, Supervisor Wilkerson caught D.O. Bailey sleeping at work and emailed her supervisor, Sacks, and cc'd Silby and Trosclair reporting that D.O. Bailey had two verbal warnings and requesting permission to issue a coach and counseling. Silby was not at work on January 11, 2020, and alleges that she was not made aware of the D.O. Bailey incident until she presented for work on January 13, 2020.

On January 13, 2020, Trosclair went to the Rivarde Detention Center at approximately 3:00 a.m. based on an alleged tip[1] that multiple people were sleeping on the night shift, including Wilkerson (also an African American female) and Silby. He found two detention officers asleep on duty and claims he also saw Silby sleeping on duty when he peered through what she describes as miniscule holes in the window blinds. Silby alleges that at the time she made her rounds earlier in the shift, neither detention officer was sleeping. She also alleges that no one had advised her that they witnessed other employees asleep that evening or on prior evenings. Trosclair required Silby, Wilkerson, and Bailey to write statements related to the sleeping incident.

On January 14, 2020, Silby had to attend a doctor's appointment for her mother and communicated this to her supervisor Ralph Sacks with three hours' notice. Jefferson Parish policy requires 2 hours' notice, but Silby complains that Trosclair took issue with her request for leave and tried to issue her discipline.

Silby contacted H.R. Manager Gretchen Tilton on January 15, 2020, requesting to file a grievance against Trosclair for harassment and discrimination. She advised that Trosclair had been targeting her and accusing her of policy violations and that she was afraid to file a grievance because she believed Trosclair would further retaliate against her and that his friendship with

---

[1] Silby alleged that the tip was purportedly received from Bruno who claimed that Detention Officer William Corkern told him that multiple people were sleeping on the night shift, including Wilkerson and Silby. She alleges that Corkern later testified that he never saw Silby or Wilkerson asleep on duty "and Bruno testified otherwise."

Director Juncker would influence his judgment. She asked if she could turn her grievance paperwork in to Tilton directly, but her request was declined.

On January 21, 2020, Silby received notice of a pre-disciplinary hearing for allegedly sleeping at work on January 13, 2020. The hearing was held on January 23, 2020, and Tilton, Juncker, Trosclair, and Sacks were present. Silby alleges that she was not provided with the opportunity to address the false statements and accusations made against her during the hearing. She alleges that she was accused of other incidents that were not included in the disciplinary letter. The only example she lists is that there were attempts to intimidate her into accusing her co-supervisor Wilkerson of sleeping at work.

On February 21, 2020, Sacks informed Silby that he needed to review her evaluation and the decision from the disciplinary hearing with her. She alleges that her evaluation should have been conducted in November 2019. The evaluation rated her at "Needs Improvement," which rendered her ineligible for a raise. She was rated a 1 for attendance, with the explanation that the Kronos system indicated she was late for work 25 times during the six-month rating period, and that although she had requested to adjust her schedule on some of those days due to a personal situation and made up her time, 10 of the days caused another supervisor to work later. It was noted that the issue was addressed with Silby but she failed to remedy the problem.

Silby says she did not receive a copy of her evaluation until her civil service appeal. She alleges that it had been altered with "eligible" whited out and replaced with "ineligible" for a pay raise. Juncker testified at the appeal hearing that "eligible" must have been changed to "ineligible" by Personnel. Referee Nass stated that the Appointing Authority may change the evaluation at any time they want. Silby argues this is a violation of parish policy and her due process rights.

Silby received a disciplinary letter on February 21, 2020, advising that she had been demoted to Juvenile Detention Officer II with a reduction in annual salary of $9,161, effective that day. She was also assigned to the 3:00 p.m. to 11 p.m. shift, even though she had previously advised that she could not work that shift. The disciplinary letter summarizes the report of Silby sleeping during her shift, her response during the pre-disciplinary hearing, an accusation that she only made two rounds during her shift on January 13, 2020, and the conclusion that she neglected her duty by failing to stay awake and alert while on duty and that she encouraged an environment that led employees to believe sleeping was acceptable. Silby's recitation of the disciplinary letter also includes a list of the policies her actions were found to have violated. Although her recitation of the contents of the disciplinary letter does not refer to her failure to check bags of employees, she alleges that one of the reasons listed in support of her demotion was her failure to do so.

On February 21, 2020, Silby had to go to the doctor. She presented DJS with a doctor's note excusing her from work on February 21-27, 2020, and providing that she could return to work on February 28, 2020. Silby alleges that Juncker called her and threatened that he did not believe she was sick, that sick leave can only be approved by him, and that if Silby did not present to work that day she would be presumed to have resigned. She alleges that she resigned on March 11, 2020, due to the continuous retaliation, targeting, harassment, and discrimination.

Silby alleges that she attempted to appeal her demotion with Jefferson Parish Civil Service on March 10, 2020. The hearing was continued multiple times and was held on September 29, 2020, and October 13, 2020. She alleges that on October 20, 2020, Referee Nass issued an order denying her appeal despite her denial that she was asleep while on the job on January 13, 2020 for a long period of time and that she was splitting rounds. But Silby asserts that splitting rounds "was perceived by all to be an acceptable practice."

6

She appealed the Referee's determination to the Board on November 4, 2020. Oral argument was presented on February 23, 2021. The Board affirmed the referee's decision.

Silby alleges that other non-African American employees and men in DJS have been treated more favorably than Silby and were afforded progressive discipline or no discipline after failing to follow policies or guidelines that Silby was disciplined for violating. She offers several examples which the court does not recount here because Defendants do not seek to dismiss her discrimination claims.

Silby filed the present lawsuit on March 31, 2021 against Jefferson Parish, Director Juncker, and Assistant Director Trosclair. Defendants filed a motion to dismiss and Silby filed an amended complaint to cure some of the purported deficiencies identified by the defendants. In filing her amended complaint, she represented that she was dismissing Juncker and Trosclair in their individual and official capacities for violations of § 1983, Title VII, and Louisiana Employment Discrimination Law. Her amended complaint removed Juncker and Trosclair entirely as defendants, but as defendants point out, some of her allegations still refer to "defendants" in the plural.[2]

In addition to other claims that defendants do not now challenge, Silby asserts that her "Fourth Amendment Procedural Due Process" rights were violated because "her demotion was without cause, arbitrary and capricious, and resulted in a clear denial of her guaranteed and vested property right in her employment." She alleges that she was not provided adequate notice and an opportunity to be heard in advance of the pre-disciplinary hearing and that the hearing included discussion of alleged policy violations that were not included in the pre-disciplinary hearing notice. She also alleges that defendants failed to follow their policies relating to the pre-disciplinary

---

[2] Out of an abundance of caution, defendants appear on behalf of all defendants in filing the present partial motion to dismiss.

hearing and failed to provide written notice of the reasons for the adverse employment action and how the policies were violated.

Silby filed this lawsuit on March 31, 2021, against Jefferson Parish, Trosclair, and Juncker. The parties unanimously consented to proceed before the magistrate judge and the matter has been referred to the undersigned for all proceedings. After defendants filed their original motion to dismiss, Silby filed her First Supplemental and Amending Complaint. The defendants then filed the present Partial Motion to Dismiss. (Rec. Doc. 17).

<u>Law and Analysis</u>

*1. Standard for Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." <u>Cuvillier v. Taylor</u>, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re* <u>Katrina Canal Breaches Litigation</u>, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id</u>. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

2. *Punitive Damages under § 1981*

It is well settled that municipalities are immune from punitive damages under 42 U.S.C. § 1983. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Similarly, punitive damages are not available against a government, government agency or political subdivision under 42 U.S.C. § 1981. Oden v. Oktibbeha Cty., Miss., 246 F.3d 458, 465–66 (5th Cir. 2001).

Defendants argue that Silby's remaining claim for punitive damages against Jefferson Parish should be dismissed. Silby responds that punitive damages are available where a defendant's conduct is outrageous or because of a defendant's reckless indifference to the rights of others.

Silby is correct as the law pertains to government officials and non-government actors. For example, in the case cited by Silby, the United States Supreme Court considered the standard for assessing punitive damages against five guards and correctional officers under § 1983. Smith v. Wade, 461 U.S. 30, 56 (1983). Importantly though, Silby has offered no legal support for imposing punitive damages on a municipality such as Jefferson Parish.

The court finds that Silby's claim for punitive damages against Jefferson Parish under § 1981 and § 1983 must be dismissed because punitive damages are not available under those statutes as to a political subdivision.

3. *Due Process Violation*

The court assumes that Silby is asserting both a procedural and substantive due process claim, although she only explicitly refers to a "Procedural Due Process claim" in her complaint.[3] As further discussed below, the facts alleged in Silby's complaint are insufficient to state either a procedural due process or a substantive due process claim.

i. *Procedural Due Process Claim*

To establish a procedural due process claim, plaintiff must "show that (1) she was deprived of a liberty or property interest protected by the due process clause, and (2) that she was deprived of that interest without constitutionally adequate process." LaCroix v. Marshall Cty., Mississippi, 409 F. App'x 794, 803 (5th Cir. 2011).

"In Louisiana, a permanent classified civil service employee has a protected property interest in her job." Wallace v. Shreve Mem'l Libr., 79 F.3d 427, 431 (5th Cir. 1996); see Hudson v. Dep't of Pub. Safety & Corr., Louisiana State Penitentiary, 96-0499 (La. App. 1 Cir. 11/8/96), 682 So. 2d 1314, 1318. Silby alleges that she became classified as a permanent civil servant as of November 11, 2019. Defendants do not appear to contest that Silby had a protected property interest in her job, nor do they appear to argue that Silby's demotion did not amount to a deprivation of that interest. For purposes of this motion, the court assumes the first element of a procedural due process claim has been satisfied.

In the case of a public employee, due process requires that the employee be provided "some kind of a hearing" prior to termination. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542,

---

[3] Silby's complaint claims to assert a "Procedural Due Process claim." However, she cites the standard for a substantive due process claim in her complaint and in her opposition to defendants' Motion to Dismiss. In her opposition memorandum, she explicitly invokes substantive due process, though she also seems to argue that her procedural due process rights were violated.

(1985). At a minimum, the employee is entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546. Where the pretermination hearing is minimal, due process "requires a full hearing after termination" and "at a meaningful time." Schaper v. City of Huntsville, 813 F.2d 709, 716 (5th Cir. 1987). Indeed, courts have held that errors in the pre-termination proceeding can be remedied by post-termination proceedings that meet due process requirements. See Glenn v. Newman, 614 F.2d 467, 472 (5th Cir. 1980). For example, in Glenn, the United States Court of Appeals for the Fifth Circuit found that although the pretermination proceeding did not meet due process requirements, due process was satisfied because in the post termination proceedings, the employee "received written notice of the charges against him and was given sufficient time to prepare for the hearing . . . he was represented by an attorney who examined and cross-examined witnesses on his behalf, and he was allowed to present his case orally." Id.

Similarly, the Fifth Circuit in Finch v. Fort Bend Independent School District found that procedural due process was satisfied where the superintendent met with the principal prior to reassigning the principal to the maintenance department, the principal received written notice of the reasons for her reassignment and of the opportunity to use the grievance process, and she participated in at least one grievance hearing in front of the school board with counsel representing her and an opportunity to testify under oath. 333 F.3d 555, 562 (5th Cir. 2003). The court of appeals found that "[b]ecause the grievance process gave [the principal] an opportunity to present her basic argument—that she should be working as a school principal rather than in the maintenance department—and the process was complete before she resigned, procedural due process is satisfied." Id.

As to the timing, the Supreme Court has observed that "[a]t some point, a delay in the post-termination hearing would become a constitutional violation." Loudermill, 470 U.S. at 547. In Loudermill, the Court found that an alleged 9-month delay with no other indication that the wait was unreasonably prolonged was insufficient to state a claim for deprivation of constitutional due process. Id.

Defendants argue that by Silby's own allegations, the requirements for procedural due process were met as to her pre-disciplinary hearing. They point out that she alleges that she received notice of the pre-disciplinary proceeding via correspondence dated January 21, 2020, accusing her of sleeping on the job and outlining the Jefferson Parish workplace policies that may have been violated. And she admits that she attended her pre-disciplinary hearing. Defendants argue that although Silby claims that she did not receive adequate notice of the incidents discussed at the pre-disciplinary hearing, the only "other incident" she identifies arises out of the same subject matter—sleeping on the job. Defendants further argue that Silby's allegation that she was not provided the opportunity to address the false statements and accusations against her during the hearing is conclusory and unsupported by any factual allegations to show that she was denied this opportunity.  Similarly, defendants argue that Silby's allegation that defendants failed to follow their policies is unsupported by any details of what policies were violated. Further, they argue that Silby's allegation that defendants failed to provide written notice of the reasons for the adverse employment action  is refuted by the extensive findings in the disciplinary letter that she quotes in her complaint.

Finally, defendants argue that even if the court finds a plausible due process claim through the pre-disciplinary process, any deficiencies were cured by her ability to participate in two post-disciplinary proceedings. They point out that by her own admission, Silby availed herself of the

post-disciplinary proceedings through her appeal of her demotion to the Jefferson Parish Personnel Board. Silby alleges both that she participated in an  appeal to the Personnel Board's Referee and a subsequent appeal to the Personnel Board to review the Referee's determination.

As to Silby's allegation that she suffered a due process violation and that parish policy was violated when the Referee stated that a performance evaluation can be changed at any time, defendants argue that her allegations are conclusory because she fails to identify the purported policy that was violated or how her due process rights were violated.

In opposition, Silby argues that following state administrative proceedings does not bear on whether constitutionally mandated due process requirements have been satisfied.[4] As discussed above, Silby's complaint asserts that her procedural due process rights were violated because she did not receive adequate notice and an opportunity to be heard, because accusations were discussed at the pre-disciplinary hearing that were not included in the pre-disciplinary notice, and because defendants failed to follow policies by failing to provide written notice of the reasons for the adverse employment action. Her opposition further explains her theory that she was denied due process because the pre-disciplinary hearing notice quoted whole sections of personnel rules instead of advising what rules or policies were violated.  She argues that her due process rights were violated when she was not permitted to address false statements and accusations made against her during the pre-disciplinary hearing, accused of incidents not included in the letter, pressured to accuse a co-supervisor of sleeping at work—which was not included in her pre-disciplinary

---

[4] She correctly points out that in <u>Loudermill</u>, the United States Supreme Court rejected the state's argument that a right conferred by the state could be taken pursuant to the state's procedures without separate consideration of constitutional due process. 470 U.S. at 541. Instead, "the constitutional procedural standards of the due process clause are . . . wholly and exclusively federal in nature: a violation of state law is neither a necessary nor a sufficient condition for a finding of a due process violation." <u>Stern v. Tarrant Cty. Hosp. Dist.</u>, 778 F.2d 1052, 1059 (5th Cir. 1985).

letter, and when the disciplinary letter failed to advise what conduct violated the claimed policies.[5] She further argues that at the pleading stage, she must only allege sufficient facts to give defendants fair notice of the claims and the grounds upon which they rest. She insists she has done so.

Silby also invokes numerous other alleged incidents that she claims resulted in due process violations, despite failing to invoke these incidents as due process violations in her complaint. Specifically, she argues that her due process rights were violated when she received a Coach and Counseling with regard to the admission of the juvenile by D.O. Davis, when she requested to file a grievance directly with Trosclair but was denied the opportunity, when she was given a 1 in her evaluation for attendance and was denied a raise, when her evaluation was changed from "eligible" for a raise to "ineligible" after she was provided with her evaluation, when Referee Nass stated that an employee evaluation can be changed at any time, when she was denied pay for her time out even though she had a doctor's note for her absence, and when her disciplinary hearing was reset several times and delayed until September and October of 2020.

With regard to these newly raised due process violations, defendants argue that Silby has failed to establish that these actions  are subject to due process protections. Further, they argue that these allegations were not previously linked to her due process claim as outlined in her complaint and the court should not consider claims raised for the first time in her opposition.

The court finds that Silby has failed to state a claim for a procedural due process violation because the allegations of her complaint establish that she received notice and an opportunity to be heard. She received a pre-disciplinary hearing letter two days before the pre-disciplinary hearing. The letter, by her allegation, accused her of "sleeping at work" and listed the policies she

---

[5] Silby's argument that her due process rights were violated "when the letter falsely determined that Silby admitted that she slept at work by using the word "doze" despite repeatedly explaining that when she uses the word 'doze' she does not mean sleeping," will be considered by the court in the context of her substantive due process claim.

allegedly violated by doing so. She participated in her pre-disciplinary hearing. Although she asserts that new topics were raised there, her allegations could not lead to that conclusion. The only other incident she alleges was discussed concerns an attempt to cause Silby to accuse a co-supervisor of sleeping on the job. Not only does this relate to the same "sleeping on the job" issue identified in the pre-disciplinary letter, but it also concerns accusations against another supervisor as opposed to Silby's own wrongdoing. Moreover, her recitation of the reasons for her demotion as provided by the disciplinary letter reveal that no "other" incidents formed the basis of the demotion—only her own sleeping on the job and failure to conduct sufficient rounds is described. Silby also alleges that she was not allowed to address the false accusations against her. As defendants point out, this bare legal conclusion is not supported by any facts. Moreover, her own recitation of the disciplinary letter makes clear she did have the opportunity to present her case. Specifically, it states that "[d]uring the pre-disciplinary hearing, you said you were not sleeping, rather you were reading, slumped in the chair to one side with your hand on your face. Subsequently you acknowledged that C.T. may have seen you dozing, but stated your definition of dozing is not sleeping." (Rec. Doc. 16, at 10). In the face of these factual allegations, the court cannot defer to her conclusory argument that she was not allowed to present her case. The court finds that Silby's own allegations establish that she had written notice of the charge against her and an opportunity to tell her side of the story and that due process was thereby satisfied.

Further, Silby participated in the appeals process that provided her with two opportunities for post-disciplinary hearings. She alleges that the Civil Service hearing took place over two days, on September 20, 2020 and October 13, 2020. By that time, Silby had the disciplinary notice that described that conduct she was accused of and the policies she was found to have violated. Although she claims the letter did not describe how the policies were violated, by her recitation,

the letter found that she displayed poor judgment and negligent behavior by failing to remain vigilant and that this behavior jeopardized the safety of residents and officers on duty, that her behavior encouraged an environment that led employees to believe that sleeping was acceptable, that she failed to provide  productive work efforts throughout all regularly scheduled work hours, and that she demonstrated unprofessional and unacceptable conduct. Thereafter, the letter cited the specific policies violated along with a summary of those policies, including attendance and leave (which includes the requirement that full-time employees shall perform a  full day's work every day of work), "work-related decisions" (which includes the requirement that work-related decisions must be void of unfairness and unreasonableness), "conformance to law," "conduct unbecoming an employee," "maintaining effective standards of service," "licensure and proficiency" (which includes the explanation that unsatisfactory performance may be evidenced by an unwillingness or inability to perform any assigned duty, task, or responsibility), "appropriate action," "carrying out assigned duties," "compliance with policies," "neglect of duty" (which includes the specific requirement that an employee remain awake and alert while on-duty). The court finds this thorough description of the charges, findings, and policies violated was more than adequate notice to Silby in advance of the post-disciplinary hearings in which she participated. After the Referee upheld the discipline, Silby alleges that she filed an appeal to the Board and participated in oral argument. The court finds no defects in the procedural due process afforded to Silby in the issuance of her demotion.

As to the newly invoked due process violations, the court agrees with the defendants that Silby has failed to invoke these claims in her complaint. Even if the court could consider them, the court has been presented with no basis to find that receiving a Coach and Counseling, being denied a variance from the grievance filing procedure, being told that evaluations can be changed,

16

receiving a 1 on her evaluation, having an evaluation changed, or being denied pay for time off despite having a doctor's note could qualify as being deprived of her property interest in her job. With regard to the alleged delay in the post-disciplinary hearing, which was held in September and October 2020 after she filed the appeal in March 2020, the court finds that this allegation is insufficient to state a claim because an allegation of a time period without more does not show that a delay violated due process. Loudermill, 470 U.S. at 547.

   *b.*  *Substantive Due Process Claim*

   To establish a substantive due process claim against her employer, plaintiff must show that "(1) that [she] had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." Harrington v. Harris, 118 F.3d 359, 368 (5th Cir. 1997). A public employer's decision was arbitrary and capricious when it "'so lacked a basis in fact' that it could be said to have been made 'without professional judgment.'" Jones v. Louisiana Bd. of Sup'rs of Univ. of Louisiana Sys., 809 F.3d 231, 240 (5th Cir. 2015) (quoting State of Tex. By & Through Bd. of Regents of Univ. of Texas Sys. v. Walker, 142 F.3d 813, 819 (5th Cir. 1998)). In McMullen v. Starkville Oktibbeha Consolidated School District, for example, the plaintiff argued that the principal and superintendent were arbitrary and capricious in determining she had abandoned her contract. 200 F. Supp. 3d 649, 659 (N.D. Miss. 2016). Plaintiff had missed a significant amount of work for health reasons beginning April 16; she did not come by on May 1 to sign her contract though she responded to the email informing employees of the date to sign contracts by asking that her contract be mailed to her or sent home with another teacher; and she notified her principal on May 15 that she had not been cleared to return to work and was uncertain if she would be back before the end of the school year. Id. at 652-53. She also failed to provide lesson plans for more than the first week she was away. Id. at 660.

Acknowledging that the May 15 notice was less than absolute about whether she would return, the court nonetheless found sufficient facts to support the school official's decision and held that the officials' actions were not arbitrary or capricious or objectively unreasonable. Id.

Here, defendants argue merely that she has failed to set forth sufficient facts to state such a claim. In opposition, Silby argues that her due process rights were violated because the disciplinary hearing resulted in a finding that Silby admitted she slept at work by using the word "doze" despite her repeated explanation that when she uses the word "doze" she does not mean sleeping. This appears to be the only asserted basis for a substantive due process claim.

The court can find no basis for a plausible substantive due process claim. The disciplinary hearing resulted in a  finding that Silby had been sleeping on the job. Silby disagrees with this finding, but she admits that Trosclair said he had seen her sleeping. She disagrees with the interpretation of her use of the word "doze," but the disciplinary findings acknowledged this despite ultimately concluding she had been sleeping. Where there is evidence to support the disciplinary decision, the court cannot find it is arbitrary and capricious. Silby's substantiative due process claim must be dismissed because she has failed to allege facts that state a plausible claim.

4. *Conspiracy to Interfere with Civil Rights under § 1985*

To state a conspiracy claim under §1985, plaintiff must allege :

(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

Hilliard v. Ferguson, 30 F.3d 649, 652–53 (5th Cir. 1994). "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the

18

conspirators' action." <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971). The first element cannot

be satisfied by two individuals who are part of the same entity because a  "corporation cannot

conspire with itself any more than a private individual can, and it is the general rule that the acts

of the agent are the acts of the corporation." <u>Hilliard v. Ferguson</u>, 30 F.3d 649, 653 (5th Cir. 1994)

(quoting <u>Nelson Radio & Supply Co. v. Motorola, Inc.</u>, 200 F.2d 911, 914 (5th Cir. 1952)). For

example, in <u>Hilliard</u>, the Fifth Circuit held that "a school board and its employees constitute a

single legal entity which is incapable of conspiring with itself for the purposes of § 1985(3)."

<u>Hilliard v. Ferguson</u>, 30 F.3d 649, 653 (5th Cir. 1994). Similarly, in <u>Aucoin v. Kennedy</u>, the

Eastern District of Louisiana dismissed plaintiff's conspiracy claim under §1985(3) under the

intra-corporate conspiracy doctrine where the alleged conspirators were the Fire District and two

of its agents—the chairman and the fire chief. 355 F. Supp. 2d 830, 846 (E.D. La. 2004). In

contrast, the Southern District of Texas in <u>Hill v. City of Houston</u> held that the plaintiff could state

a conspiracy claim where the alleged conspirators were members of different departments within

the City of Houston "a huge organization with numerous branches and departments independent

from one another." 991 F. Supp. 847, 851 (S.D. Tex. 1998). Specifically, the plaintiff alleged that

"the Fire Department, Fleet Management, and Legal Department of the City of Houston conspired

to cover up the events relating to the fire and subsequent investigation." <u>Id.</u>  The court was not

convinced that the intra-corporate conspiracy doctrine should result in dismissal of plaintiff's

claims. <u>Id.</u>

Defendants argue that Silby cannot state a conspiracy claim because all of the individuals

who allegedly participated in the conspiracy are employed by Jefferson Parish and, as such, cannot

conspire with each other pursuant to the intra-corporate conspiracy doctrine. Further, they argue

that Silby has failed to plead facts to support the elements of a conspiracy. Silby relies on <u>Hill</u>, and

argues that she alleges that employees from different departments within DJS and Human Resources conspired to discriminate against her.

The court agrees with defendants that Silby's conspiracy claims under §1985(3) must be dismissed. Silby alleges a conspiracy between Juncker, Trosclair, Bruno, Corkern, and Tilton. Each of the alleged conspirators are part of DJS, a single department within the Jefferson Parish.[6] Per Silby's complaint, Juncker is the Director of DJS, Trosclair is the Assistant Director, Bruno is a Home Detention Supervisor, Corkern is a Detention Officer, and Tilton is the HR Manager for DJS.  This case is not like Hill where the City's Fire Department, Legal Department, and Fleet Management Department were implicated. Moreover, to the extent Human Resources could be considered a separate entity from DJS in spite of Silby's characterization of Tilton's role, beyond Tilton's presence at the hearing, Silby alleges no facts supporting a finding that she was part of the alleged conspiracy to fabricate a reason to demote Silby.

Silby cannot state a claim for conspiracy under §1985(3) and therefore this claim must be dismissed.

5. *Claims not Plead in the Amended Complaint*

Defendants ask that to the extent that Silby is still asserting a § 1981 claim against Juncker and Trosclair by referencing "defendants" in Count 1, this claim be dismissed because she represented that she was dismissing this claim in filing her Motion for Leave to Amend. Silby does not dispute this characterization. Accordingly, the court orders that Silby's Section 1981 claim against Juncker and Trosclair be dismissed.

Defendants also ask that the court dismiss any harassment or hostile work environment claim that Silby has attempted to assert against Jefferson Parish because they sought to dismiss

---

[6] At present, only Jefferson Parish and none of the alleged conspirators are named as defendants.

this claim in their original motion to dismiss and Silby did not assert a separate harassment and hostile work environment claim in her Amended Complaint. Silby does not dispute this characterization in her opposition. Accordingly, the court orders that Silby's harassment and hostile work environment claim, if any, is dismissed.

## Conclusion

For the foregoing reasons, defendants' Partial motion to Dismiss (Rec. Doc. 17) is GRANTED. Silby's claim for punitive damages against Jefferson Parish under 42 U.S.C. §1981 Silby's procedural and substantive due process claims; her conspiracy claim under 42 U.S.C. § 1985; any §1981 claim against Trosclair and Juncker; and any claim for harassment or hostile work environment are hereby dismissed with prejudice.

New Orleans, Louisiana, this  3rd  day of January, 2022.

Janis van Meerveld
United States Magistrate Judge