UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BRISHAWNA SILBY | * | CIVIL ACTION |
| | * | NO. 21-662 |
| | * | |
| VERSUS | * | DIVISION: 1 |
| | * | |
| | * | MAGISTRATE JUDGE |
| PARISH OF JEFFERSON, ET AL. | * | JANIS VAN MEERVELD |
| | * | |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is defendants' Partial Motion to Dismiss (Rec. Doc. 29). Because plaintiff has not stated a claim under La. Rev. Stat. § 51:2256 and even if she had, it has prescribed, the motion is GRANTED, and her La. Rev. Stat. § 51:2256 claim is hereby dismissed.

Background

The allegations in plaintiff Brishawna Silby's Second Supplemental and Amending Complaint are largely the same as those in her First Supplemental and Amending Complaint and are summarized below. Silby is an African-American female who began working as a Juvenile Home Detention Supervisor for the Jefferson Parish Department of Juvenile Services ("DJS") at the Rivarde Juvenile Detention Center in May 2019. She received on-the-job training by Home Detention Supervisor Violet Troulliet. The training lasted a week, and thereafter she received another week of on-the-job training with Home Detention Supervisor Christopher Bruno. After her training, she began working the midnight through 8:00 a.m. shift from Saturday through Wednesday.

Bruno and Christopher Trosclair, the Assistant Director of DJS, advised Silby in June 2019 that there was an opening on the 4pm to 12am supervisor shift. Silby declined the shift change and

1

notified Bruno and Trosclair that she could not take the earlier shift because she needed to take care of her elderly mother and her children, one of whom is disabled.

On or about August 29, 2019, Trosclair contacted Silby about her late arrival at work and informed her that he would recommend to DJS Director Roy Juncker that her probationary period be extended. He also said it that if the issue were immediately corrected and sustained, then the probationary period could be shortened to less than a full year. Silby explained that she had been told during training that the time keeping system had a grace period of seven minutes. She alleges that when she learned there was no grace period in the Kronos system, she corrected the issue.

Silby alleges that she complained to Trosclair on multiple occasions about issues related to lack of staffing due to Troulliet's alleged failure to follow parish policy for scheduling detention officers. Silby alleges that after making these complaints, Trosclair began to target her by attempting to issue disciplinary action against her.

On October 16, 2019, Trosclair asked Silby if she would work an earlier shift. She again advised that she needed to work the midnight to 8:00 a.m. shift so she could care for her children and mother.

On November 6, 2019, Silby was advised she had successfully completed her working test period and would be a permanent civil servant effective November 11, 2019. She alleges that shortly thereafter, Trosclair attempted to write up and/or discipline her for incidents where she had not been involved.

For example, on December 17, 2019, at 7:30 p.m., an incident occurred involving a juvenile who kicked his door, put toilet paper on his window, and made a bowel movement on his sheets. Detention officer ("D.O.") Warren was on duty and Trouillet was the supervisor on duty. Silby was on vacation at the time and did not return to work until December 19, 2019. On that day,

Trosclair admonished Silby for not completing an incident report regarding the December 17, 2019 incident. He informed her that she was required to fix and complete the investigative report that Trouillet had not finished, and she was disciplined for failing to do so timely.

As another example, Silby alleges that on January 7, 2020, D.O. Robinson admitted a juvenile with contraband while supervisor Brian Davis was on duty. Silby alleges that Trosclair advised her on January 8, 2020, that the January 7 situation with the juvenile as well as an incident involving a juvenile improperly admitted on January 8, 2020 at 12:45 a.m., were unacceptable. She explained that she was not on shift at the time of the January 7, 2020, incident and that D.O. Kynan Davis usually works at the intake desk as acting supervisor for the overnight shift at the time the juvenile was admitted at 12:45 a.m. D.O. Davis admitted it was his error and that he failed to notify Silby. Silby says she was not aware of the policy failure until she was given a "coach and counseling" for the issue.

On January 11, 2020, Supervisor Wilkerson caught D.O. Bailey sleeping at work and emailed her supervisor, Sacks, and cc'd Silby and Trosclair reporting that D.O. Bailey had two verbal warnings and requesting permission to issue a coach and counseling. Silby was not at work on January 11, 2020, and alleges that she was not made aware of the D.O. Bailey incident until she presented for work on January 13, 2020.

On January 13, 2020, Trosclair went to the Rivarde Detention Center at approximately 3:00 a.m. based on an alleged tip[1] that multiple people were sleeping on the night shift, including Wilkerson (also an African American female) and Silby. He found two detention officers asleep on duty and claims he also saw Silby sleeping on duty when he peered through what she describes

---

[1] Silby alleged that the tip was purportedly received from Bruno who claimed that Detention Officer William Corkern told him that multiple people were sleeping on the night shift, including Wilkerson and Silby. She alleges that Corkern later testified that he never saw Silby or Wilkerson asleep on duty "and Bruno testified otherwise."

as miniscule holes in the window blinds. Silby alleges that at the time she made her rounds earlier in the shift, neither detention officer was sleeping. She also alleges that no one had advised her that they witnessed other employees asleep that evening or on prior evenings. Trosclair required Silby, Wilkerson, and Bailey to write statements related to the sleeping incident.

On January 14, 2020, Silby had to attend a doctor's appointment for her mother and communicated this to her supervisor Ralph Sacks with three hours' notice. Jefferson Parish policy requires 2 hours' notice, but Silby complains that Trosclair took issue with her request for leave and tried to issue her discipline.

Silby contacted H.R. Manager Gretchen Tilton on January 15, 2020, requesting to file a grievance against Trosclair for harassment and discrimination. She advised that Trosclair had been targeting her and accusing her of policy violations and that she was afraid to file a grievance because she believed Trosclair would further retaliate against her and that his friendship with Director Juncker would influence his judgment. She asked if she could turn her grievance paperwork into Tilton directly, but her request was declined.

On January 21, 2020, Silby received notice of a pre-disciplinary hearing for allegedly sleeping at work on January 13, 2020. The hearing was held on January 23, 2020, and Tilton, Juncker, Trosclair, and Sacks were present. Silby alleges that she was not provided with the opportunity to address the false statements and accusations made against her during the hearing. She alleges that she was accused of other incidents that were not included in the disciplinary letter. The only example she lists is that there were attempts to intimidate her into accusing her co-supervisor Wilkerson of sleeping at work.

On February 21, 2020, Sacks informed Silby that he needed to review her evaluation and the decision from the disciplinary hearing with her. She alleges that her evaluation should have

been conducted in November 2019. The evaluation rated her at "Needs Improvement," which rendered her ineligible for a raise. She was rated a 1 for attendance, with the explanation that the Kronos system indicated she was late for work 25 times during the six-month rating period, and that although she had requested to adjust her schedule on some of those days due to a personal situation and made up her time, 10 of the days caused another supervisor to work later. It was noted that the issue was addressed with Silby but she failed to remedy the problem.

Silby says she did not receive a copy of her evaluation until her civil service appeal. She alleges that it had been altered with "eligible" whited out and replaced with "ineligible" for a pay raise. Juncker testified at the appeal hearing that "eligible" must have been changed to "ineligible" by Personnel. Referee Nass stated that the Appointing Authority may change the evaluation at any time they want. Silby argues this is a violation of parish policy and her due process rights.

Silby received a disciplinary letter on February 21, 2020, advising that she had been demoted to Juvenile Detention Officer II with a reduction in annual salary of $9,161, effective that day. She was also assigned to the 3:00 p.m. to 11 p.m. shift, even though she had previously advised that she could not work that shift. The disciplinary letter summarizes the report of Silby sleeping during her shift, her response during the pre-disciplinary hearing, an accusation that she only made two rounds during her shift on January 13, 2020, and the conclusion that she neglected her duty by failing to stay awake and alert while on duty and that she encouraged an environment that led employees to believe sleeping was acceptable. Silby's recitation of the disciplinary letter also includes a list of the policies her actions were found to have violated. Although her recitation of the contents of the disciplinary letter does not refer to her failure to check bags of employees, she alleges that one of the reasons listed in support of her demotion was her failure to do so.

On February 21, 2020, Silby had to go to the doctor. She presented DJS with a doctor's note excusing her from work on February 21-27, 2020, and providing that she could return to work on February 28, 2020. Silby alleges that Juncker called her and threatened that he did not believe she was sick, that sick leave can only be approved by him, and that if Silby did not present to work that day she would be presumed to have resigned. She alleges that she resigned on March 11, 2020, due to the continuous retaliation, targeting, harassment, and discrimination.

Silby alleges that she attempted to appeal her demotion with Jefferson Parish Civil Service on March 10, 2020. The hearing was continued multiple times and was held on September 29, 2020, and October 13, 2020. She alleges that on October 20, 2020, Referee Nass issued an order denying her appeal despite her denial that she was asleep while on the job on January 13, 2020 for a long period of time and that she was splitting rounds. But Silby asserts that splitting rounds "was perceived by all to be an acceptable practice."

She appealed the Referee's determination to the Board on November 4, 2020. Oral argument was presented on February 23, 2021. The Board affirmed the referee's decision.

Silby alleges that other non-African American employees and men in DJS have been treated more favorably than Silby and were afforded progressive discipline or no discipline after failing to follow policies or guidelines that Silby was disciplined for violating. She offers several examples which the court does not recount here because Defendants do not seek to dismiss her discrimination claims.

In support of her claim for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, she alleges that Jefferson Parish, though Trosclair and others, retaliated against her by not permitting her to turn a grievance against Trosclair into HR, through the lodging of false accusations against her, through her demotion to a shift time that she could not work due to her

family needs, and by trying to force her to lie that her co-supervisor was asleep on duty and that she admitted she was sleeping on duty.

In support of her claim for conspiracy to retaliate and discriminate, Silby alleges—as she previously did in alleging conspiracy under 42 U.S.C. § 1985, a claim which was dismissed for failure to state a claim—that Trosclair, Juncker, Bruno, and Corkern acted together to create and fabricate policy violations in order to demote Silby and that they provided misleading and/or false statements about Silby allegedly sleeping on duty. She alleges that Trosclair, Juncker, and Tilton peppered her with questions about her co-supervisor Wilkerson during a pre-disciplinary hearing and that Juncker tried to intimidate her into falsely accusing her co-worker of sleeping on the job. She alleges that Juncker twisted her words to try and obtain testimony to support the claim that she had been asleep on duty and had witnessed Wilkerson asleep at work. She also alleges that Jefferson Parish, through Juncker, Trosclair, Tilton, Bruno, and Corkern, "conspired to retaliate" against her and to entice other employees to aid in discrimination and retaliation, which resulted in her demotion, reduction in pay, emotional distress and change in her work schedule meant to intentionally cause harm and difficulties to her family schedule.

Silby filed the present lawsuit on March 31, 2021, against Jefferson Parish, Director Juncker, and Assistant Director Trosclair. The court granted in part the defendants' partial motion to dismiss and dismissed Silby's claim for punitive damages against Jefferson Parish under 42 U.S.C. § 1981, her procedural and substantive due process claims, her conspiracy claim under 42 U.S.C. § 1985, her § 1981 claim against her supervisors, and any harassment or hostile work environment claims.

Law and Analysis

1. *Standard for Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." Id. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

2. *Conspiracy under La. Rev. Stat. 51:2256.*

Under La. Rev. Stat. § 51:2256:

It shall be an unlawful practice for an employer as defined in R.S. 23:302 to conspire:
(1) To retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this Chapter or by Chapter 3-A of Title 23

8

> of the Louisiana Revised Statutes of 1950, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950.
> (2) To aid, abet, incite, compel, or coerce a person to engage in any of the acts or practices declared unlawful by this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950.
> (3) To obstruct or prevent a person from complying with the provisions of this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950 or any order issued thereunder.
> (4) To resist, prevent, impede, or interfere with the commission, or any of its members or representatives, in the lawful performance of duty under this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950.

La. Stat. Ann. § 51:2256. The referenced "Chapter 3-A of Title 23" provides for "Prohibited Discrimination in Employment." Louisiana Revised Statute § 23:302 referred to in the preamble defines "employer" as "a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee" as long as the "employer employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." Id. § 23:302(2).

Section 51:2256 has not been consistently applied in the courts. First, there is a string of cases—including some recent—adopting the view of the Louisiana Third Circuit Court of Appeal in Lowry v. Dresser, Inc., 2004-1196 (La. App. 3 Cir. 2/2/05), 893 So. 2d 966, 968, that § 51:2256 no longer applied to employment discrimination following revisions to the statute in 1997. See Glover v. Smith, 478 F. App'x 236, 243 (5th Cir. 2012); Johnson v. JP Morgan Chase Bank, N.A., 293 F. Supp. 3d 600, 615 (W.D. La. 2018). But these cases considered the text of § 51:2256 when it referred only to violations of the "this Chapter," i.e., Title 51, Chapter 38. In 2014, the statute was amended to apply also to violations of Louisiana's Employment Discrimination Law found in

9

"Chapter 3-A of Title 23." See 2014 La. Sess. Law Serv. Act 756 (S.B. 412) (West). It is now clear that § 51:2256 applies in the employment discrimination context.

More recently, there are some cases that conclude that because Louisiana's employment discrimination law is substantially similar to federal employment discrimination law, a plaintiff who states a claim for retaliation under Title VII also states a retaliation claim under §51:2256. Lee v. City of Shreveport, No. CV 21-3232, 2022 WL 2161941, at *5 (W.D. La. June 15, 2022); Johnson v. Associated Wholesale Grocers, Inc., No. CV 18-5919, 2019 WL 1572485, at *8 (E.D. La. Apr. 11, 2019); see Martin v. Winn-Dixie Louisiana, Inc., No. 3:13-CV-00682-JWD, 2015 WL 1281943, at *7 (M.D. La. Mar. 20, 2015) (holding that the present text of "La. R.S. 51:2256 creates a cause of action for retaliation in the case of employees alleging discrimination based on a disability, race, color, religion, sex, national origin, or pregnancy, childbirth and related medical conditions."). However, these courts do not address the statute's explicit use of the word "conspire" to modify all four types of prohibited conduct.

In contrast, other courts hold that §51:2256 applies only to conspiracies. Johnson v. JP Morgan Chase Bank, N.A., 293 F. Supp. 3d 600, 615 (W.D. La. 2018); Jones v. City of Monroe, No. 3:19-CV-00832, 2019 WL 5488603, at *10 n. 15 (W.D. La. Oct. 8, 2019), report and recommendation adopted, No. 3:19-CV-00832, 2019 WL 5491922 (W.D. La. Oct. 24, 2019); see Phelps v. Calumet Lubricants Co., LP, No. CV 15-2625, 2016 WL 4497011, at *3 (W.D. La. Aug. 24, 2016). For example, the court in Phelps applied the Black's Law Dictionary definition of "conspiracy" to a plaintiff's claim under § 51:2256. 2016 WL 4497011, at *3. Black's Law Dictionary defines "conspiracy" as "[a]n agreement by two or more persons to commit an unlawful act, coupled with an intent to achieve the agreement's objective, and (in most states) action or conduct that furthers the agreement; a combination for an unlawful purpose." Id. (quoting

Conspiracy, Black's Law Dictionary (10th ed. 2014)). The Phelps court dismissed the plaintiff's § 51:2256 claim where she pled no facts showing that an agreement had been reached between two or more persons to retaliate against her or that two or more persons had a common intent to retaliate against her. Id. Her conclusions to that effect, without supporting facts, were held to be insufficient. Id.

The court finds no basis in the statutory text from which to conclude that §51:2256 makes retaliation alone,[2] without a conspiracy to retaliate, unlawful. The statute is titled "Conspiracy to violate human rights and discrimination laws." It specifically makes it unlawful for an employer to "conspire to," among other things, retaliate or discriminate against a person who has opposed an unlawful employment discrimination practice.[3] The plain text of the statute requires a conspiracy. Therefore, the court considers whether Silby has stated a claim for conspiracy to retaliate.

Defendants argue that Silby's claims of conspiracy are conclusory. They submit that she has alleged no discussions, agreements, or other allegations to support finding that Juncker,

---

[2] Presumably to address the possibility that this court interprets §51:2256 as a mirror image of a Title VII retaliation claim, defendants say the state law claim is duplicative. Of note, defendants did not move to dismiss Silby's Title VII retaliation claim in any of their three motions to dismiss. To the extent §51:2256 is a duplicate of Title VII, however, this would not provide a basis to dismiss the claim. Parties commonly pursue Louisiana Employment Discrimination Law claims simultaneously with their Title VII claims.

[3] Prior to the 2014 amendment, § 51:2256 began "[i]t shall be an unlawful practice for a person or two or more persons to conspire." 1988 La. Sess. Law Serv. 886. Presumably, a "conspiracy" was only implicated and required when "two or more persons" were involved as opposed to "a person." When changing "person or two or more persons" to "employer" in 2014, the legislature left in the word "conspire," indicating that a conspiracy is now always required. To the extent the continued use of the word "conspire" was not intended to require the employer to conspire, the court cannot remediate the error. As Judge Fallon observed in interpreting the same statute prior to the 2014 amendment:

> The Court does not disagree with the gravamen of the Plaintiffs' arguments: that is, that the absence of a broad anti-retaliation provision in the employment discrimination context is regressive social policy and illogical. However, the new Employment Discrimination Law does not contain such a provision. Whether or not this absence is the result of drafting errors is not for the Court to determine. It is well established in matters of statutory interpretation, that courts begin with the plain language and structure of the statutes. Coserv Ltd. Liability Corp. v. Southwestern Bell Telephone Co., 350 F.3d 482, 486 (5th Cir.2003). When the language is clear, as it is in this case, the court looks no further to divine the intent of the legislature.

Smith v. Par. of Washington, 318 F. Supp. 2d 366, 373 (E.D. La. 2004).

Trosclair, Bruno, Corkern, and Tilton conspired against her with regard to the January 15, 2020, grievance she requested to file with Tilton or the alleged fabrication of violations, peppering with questions, and twisting of her words and intimidation during the pre-disciplinary hearing. In any event, they argue, the allegations are insufficient to confer liability on Jefferson Parish. They further argue that the allegations that Juncker, Trosclair, Bruno, Corkern, and Tilton enticed other DJS employees to violate anti-discrimination laws are just a formulaic recitation of the statutory text. They also argue that she has failed to allege any facts as to how and when Juncker, Trosclair, Bruno, Corkern, and Tilton retaliated against her.

Silby responds that she has stated sufficient facts to put the defendants on notice of her claim. She points to her allegations that Trosclair made several attempts to discipline her for incidents occurring in December 2019 and January 2020, and that Trosclair appeared at Rivarde based on alleged tip that Bruno claimed to have received from Corkern. Yet, according to her complaint, Corkern testified during Silby's civil service hearing that he never saw Silby asleep, while Bruno testified that Corkern told him that he saw Silby asleep. She cites her allegations regarding her attempt to file a grievance with HR, the alleged intimidation during her pre-disciplinary hearing. She cites her allegation that she was given a poor evaluation and provided a new schedule that conflicted with her child-care needs. She argues that all of the actions were supported by Juncker because he signed off on the disciplinary letter, change of schedule, refusal to pay for her sick days, and poor evaluation.

In reply, defendants submit that Silby has cited no allegations of any specific discussions or agreement between Juncker and the other individual employees to work together in issuing disciplinary action against her. They insist her § 51:2256 claim must be dismissed because the allegations of conspiracy are mere recitations of the statutory language.

The court finds that Silby has failed to state a claim for conspiracy to retaliate. She fails to allege any facts from which one could plausibly conclude that Trosclair, Juncker, and the other DJS employees she implicates had agreed to retaliate and/or discriminate against her. Silby's argument that Juncker supported certain actions as a supervisor, even if she had included this as an allegation in her complaint, is not enough to infer a conspiracy. Silby's claim under La. Rev. Stat. §51:2556 for conspiracy to retaliate must be dismissed for failure to state a claim.

3. *Prescription of §51:2256 Claim*

Even if Silby has stated a claim under §51:2556, defendants argue it has prescribed. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003); see Songbyrd, Inc. v. Bearsville Recs., Inc., 104 F.3d 773, 775 n. 3 (5th Cir. 1997). Discrimination claims under Louisiana's Employment Discrimination Law are subject to a one year prescriptive period that is suspended during the pendency of an EEOC investigation for a period of up to six months. La. Rev. Stat. § 23:303(D). Specifically, the statute provides:

> Any cause of action ***provided in this Chapter*** shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months.

La. Rev. Stat. § 23:303 (emphasis added). The "Chapter" referred to is Chapter 3-A of Title 23, "Prohibited Discrimination in Employment."

There is some question as to whether the suspensive period also applies to causes of action under Louisiana Revised Statute § 51:2256, which appears in Chapter 38 of Title 51, not Chapter 3-A of title 23. In Roth v. N.J. Malin & Associates., Inc., Magistrate Judge Wilkinson analyzed

13

the text of the statute in effect at the time and its statutory history and concluded that the suspensive period in §23:303 did not, by its own terms, apply to plaintiff's claim under §51:2256 and that the legislature, in concurrently amending both the Louisiana Employment Discrimination Law and the Louisiana Commission on Human Rights Act, could have specified that the suspensive period in the Louisiana Employment Discrimination Act applies to causes of action under §51:2256, but the legislature did not do so. No. CIV. A. 98-1793, 1998 WL 898367, at *3 (E.D. La. Dec. 21, 1998). But § 51:2256 has been amended since that time. In 1998 when Judge Wilkinson considered the issue, §51:2256 contained no reference to the Louisiana Employment Discrimination Law. The 2014 amendments added several references to the Louisiana Employment Discrimination Law, as discussed above.

Silby argues that §51:2256 incorporates the Louisiana Employment Discrimination Law and that, therefore, the suspensive period applies. She cites no case law in support of this conclusion. Defendants argue that no suspensive period applies, citing a 2020 decision from the Middle District of Louisiana where the court applied a one year prescriptive period to the plaintiff's claim under §51:2256, without analyzing whether or not the suspensive period in § 23:303(D) might apply. Clark v. Auger Servs., Inc., 443 F. Supp. 3d 685, 712 (M.D. La. 2020). The Clark court simply cited Judge Wilkinson's Roth decision without consideration of the intervening statutory amendment.

The court finds that although the 2014 amendments made it unlawful to conspire to retaliate against an employee for opposing a practice unlawful under the Louisiana Employment Discrimination Law, this cannot be interpreted as incorporating all parts of the Louisiana Employment Discrimination Law into §51:2256, including a prescriptive period that is not referenced. By its plain terms, § 23:303(D) does not apply to claims under §51:2256 because such

claims are not "provided in" Title 23 Chapter 3-A. Thus, the court finds that the one year prescriptive period is not suspended while the plaintiff's EEOC charge is pending.[4] The parties agree that Silby's lawsuit was not filed within one year of her demotion or her resignation.[5] Accordingly, even if Silby has stated a claim for conspiracy to retaliate under §51:2256, that claim has prescribed.

## Conclusion

For the foregoing reasons, defendants' Partial Motion to Dismiss (Rec. Doc. 29) is GRANTED. Because Silby has not stated a claim under La. Rev. Stat. § 51:2256 and even if she had, it has prescribed, her La. Rev. Stat. § 51:2256 claim is hereby dismissed.

New Orleans, Louisiana, this 23rd day of August, 2022.

_____
Janis van Meerveld
United States Magistrate Judge

---

[4] Again, to the extent this is a drafting error or oversight, the court is not in a position to rectify it. See footnote 3, supra.

[5] Silby also argues that the actions taken against her during her civil service appeal hearing in September and October 2020 form part of the basis of her conspiracy to retaliate claim and that her lawsuit was filed less than one year after these hearings. As defendants point out, Silby was no longer an employee at that time. Moreover, her complaint does not allege any facts regarding the actions of Juncker, Trosclair, Bruno, Corkern, and Tilton during these hearings that could support a claim for conspiracy to retaliate.